WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Deutsch,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Anna Deutsch Trust dated September 3, 1991, et al.,<br><br>　　　　　Defendants. | No. CV-22-08234-PCT-DLR<br><br>**ORDER** |

Before the Court is a motion to transfer venue pursuant to 28 U.S.C. § 1406 or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404, submitted by Defendants Robert Klein, Alexandra Leichter ("Alice"), Robert Leichter, and David Winkler (collectively "Defendants.") (Doc. 14.) The motion is fully briefed.[1] (*See* Doc. 15; Doc. 16.) For the following reasons, the motion is granted, and the case is transferred to the United States District Court for the Central District of California.

**I.    Background**

Plaintiff Robert Deutsch is the son of decedent Anna Deutsch and is a citizen of Arizona. (Doc. 11 at ¶¶ 1, 4.) In the early 2000s, Plaintiff and Anna were involved in various real estate dealings together in Bullhead City, Arizona, though Anna resided in Los Angeles, California. (*See id.* ¶¶ 12–39.) By Plaintiff's account, the two enjoyed a close

---

[1] Oral argument is denied because the motions are adequately briefed, and oral argument will not help the Court resolve the issues presented. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

mother-son relationship for some time, and Plaintiff was included in the disposition of the Anna Deutsch Trust ("Trust"), executed in Los Angeles, California in 1991. (*Id.* ¶¶ 8–9.) According to the Trust, upon Anna's death, Alice (Anna's niece) was to receive $50,000, with the remainder of the trust being distributed in percentages: Plaintiff and his sister were each to receive thirty-five percent, and Winkler (Anna's grandson) and Gabriel and Benjamin Deutsch (Plaintiff's sons) were each to receive ten percent. (*Id.* ¶ 9.)

Anna subsequently executed several amendments to the Trust: the first in 1993, the second in 2005, the third in 2010, the fourth in 2013, the fifth in 2014, and the sixth and final in 2015. (Doc. 14-1 at 5–6.) Each amendment was executed in Los Angeles, California. (*See* Doc. 14-3 at 11, 18, 58, 96, 106; Doc. 14-4 at 36, 67–68.) Though each iteration came with a different trust distribution, it was not until the 2015 Amendment that Plaintiff was written out of the Trust completely. (Doc. 14-4 at 10.) Anna passed away in October of 2022, and the trust assets are distributable as provided for in the 2015 Amendment. That is, Alice and Leichter are each to receive approximately thirty percent; Winkler and his issue are each to receive twenty percent; and one percent is to be donated to a California non-profit corporation. (Doc. 14-1 at 6–7.)

Plaintiff now seeks to invalidate the 2014 and 2015 Amendments to the Trust for lack of capacity and undue influence and to avoid unjust enrichment. (*See* Doc. 11.) He alleges that Anna's mental and physical health deteriorated over the years. (*Id.* ¶¶ 58, 64, 65.) She suffered Dementia from around 2010 until her death and was unable to care for herself. (*Id.* ¶ 64.) At the time the 2014 and 2015 Amendments were executed, Plaintiff claims, Anna "was being cared for 24/7 by professional caregivers; she was not permitted to drive; . . . she depended on others for all of her needs; and had no control over her assets." (*Id.* ¶ 63.) She often could not "remember events from the day before." (*Id.* ¶ 65.)

Although Plaintiff was aware of Anna's mental condition, he did not come to know of his disinheritance until 2015. When Plaintiff visited Anna at her home on Mother's Day that year, she allegedly greeted him by saying, "I thought you were dead." (*Id.* ¶ 43.) Apparently, Anna's mental disorder caused her to experience delusions and hallucinations,

including that her son was dead—despite that he wrote to her shortly before that visit. (*Id.* ¶¶ 42–43.) Thus, one reason Plaintiff was disinherited, he claims, is because Anna was operating with a severely diminished capacity when she amended the Trust. (*Id.* ¶¶ 64–65.)

Plaintiff also asserts that Anna was particularly vulnerable to manipulation because of her old age and physical and mental impairments. (*Id.* ¶ 68.) Anna trusted Alice to manage most of her affairs, and Leichter paid Anna frequent visits. (*Id.* ¶¶ 69–70.) Using their physical and emotional proximity to Anna, Alice and Leichter allegedly took advantage of Anna's declining health to make themselves the primary beneficiaries of the Trust while disinheriting Plaintiff. (*Id.* ¶ 77.) Thus, Plaintiff claims, the 2014 and 2015 Amendments were a product of coercion and undue influence rather than of Anna's free will and voluntary choice. Further, distributing the assets of the Trust as distributable in the 2015 Amendment would result in unjust enrichment of Defendants.

Defendants now move to transfer venue pursuant to § 1406 or, in the alternative, to transfer venue pursuant to § 1404. Defendants argue that venue in the District of Arizona is improper because a substantial part of the events giving rise to this action did not occur here. If the Court finds otherwise, Defendants request that venue be transferred for the convenience of parties and in the interest of justice. Either way, Defendants seek to have this case transferred to the Central District of California. Because venue is improper and should be transferred in the interest of justice, the case is transferred to the Central District of California on that basis alone. The Court does not need to reach the *forum non conveniens* argument raised by Defendants.

**II.    Legal Standard**

Because this is a diversity case wherein the defendants reside in different states, venue is proper in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b)(2). "Substantial does not mean the majority of or even the most events giving rise to the claims; it's a qualitative, rather than a quantitative, assessment." *TriWest Healthcare All. Corp. v. Geneva Woods Pharmacy LLC*, No. CV-19-02052, 2020 WL 248286, at *2–*3 (D. Ariz. Jan. 16, 2020) (quotation

1 and citation omitted.)

2 The plaintiff has the burden of proving that venue is proper in the district where the suit was initiated. *Airola v. King*, 505 F. Supp. 30, 31 (D. Ariz. 1980). When deciding a challenge to venue, the pleadings need not be accepted as true. *Mach 1 Air Services Inc. v. Bustillos*, No. CV-12-02617, 2013 WL 1222567, at *9 (D. Ariz. Mar. 25, 2013) (citation omitted). The court must "draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Id.* (quotation and citation omitted.) If venue is improper, the court must either dismiss the case or, "if it be in the interest of justice, transfer [the] case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

**III. Analysis**

Unlike a motion to transfer venue based on convenience, a motion to transfer venue because venue is improper does not involve a presumption in favor of the plaintiff's choice of venue. The Court is concerned only with determining where a substantial part of the events or omissions giving rise to the action occurred. Peripheral events with only an attenuated connection to the claims are irrelevant to the inquiry. *See Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003).

For venue to be proper in Arizona, a substantial part of the events giving rise to the action must have occurred here. For example, in *Bustillos*, the court found venue was improper because the plaintiff's amended complaint did not "describe any activity in Arizona." 2013 WL 1222567, at *10. Although the plaintiff was an Arizona resident, the amended complaint only included allegations concerning the defendant's activities in El Paso, Texas. *Id.* El Paso, according to the *Bustillos* court, was "where everything happened." *Id.*

The same is true here. Plaintiff pleads no facts that could properly justify venue in the district of Arizona. Plaintiff's claims deal with *Anna's* mental state while executing the amendments and others' influence on *her*. At all relevant times, Anna resided in Los Angeles, California. (Doc. 11 at 24; Doc. 14-4 at 67–68.) She executed each amendment

in Los Angeles. (*See* Doc. 14-3 at 11, 18, 58, 96, 106; Doc. 14-4 at 36, 67–68.) She suffered Dementia in Los Angeles. Defendants allegedly exerted undue influence on Anna in Los Angeles. (Doc. 11 at ¶¶ 69–70.) Indeed, even Plaintiff's Mother's Day visit to see Anna—wherein he allegedly discovered the truth behind his disinheritance—took place at Anna's home in Los Angeles. (*Id.* at ¶ 43.) These are the critical events underlying Plaintiff's claims, and together they constitute a substantial part of the events giving rise to the action. Los Angeles is where everything happened.

In arguing otherwise, Plaintiff highlights his real estate business relationship with Anna. But these allegations, though perhaps helpful as context for why Plaintiff was originally included in the disposition of the Trust, do not relate to Anna's capacity to amend the Trust or to the undue influences that caused her to disinherit Plaintiff. None of these properties are Trust assets. Plaintiff admits that his real estate dealings with Anna merely "could have affected" their relationship. (Doc. 15 at 4.) These activities do not comprise any part of the events giving rise to the claims, let alone a *substantial* part.

Lastly, the Court need not wait for discovery to determine proper venue. (Doc. 15 at 3.) Plaintiff has not carried his burden of demonstrating that venue is proper. Based on the pleadings, the Trust, and the amendments to the Trust, drawing all reasonable inferences in Plaintiff's favor, the Court can readily determine that Arizona is an improper venue for this dispute, and that venue properly resides in the Central District of California.

**IT IS ORDERED** that Defendants' motion to transfer venue (Doc. 14) is granted. The Clerk of Court is directed to transfer this action to the United States District Court for the Central District of California.

Dated this 29th day of March, 2023.

Douglas L. Rayes
United States District Judge